THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES D. CLARK and GRANT J. DEYONGE, Individually and as Assignees of the Beneficiaries and Participants of the Clark Bros. Employees Stock Ownership Plan, the CLARK BROS. EMPLOYEE STOCK OWNERSHIP PLAN and CLARK BROS. TRANSFER, INC., <br><br>Plaintiffs,<br><br>vs.<br><br>AMERITAS INVESTMENT CORP.,<br><br>Defendant. | 4:05CV3251<br><br><br><br>**MEMORANDUM**<br>**AND ORDER** |

## *BACKGROUND*

The plaintiffs in this case are Clark Bros. Transfer, Inc., a company that offered an Employee Stock Option Plan ("ESOP") to its employees, the ESOP itself, and two ESOP participants who were also fiduciaries, trustees, and members of the Administrative Committee of the ESOP. The plaintiffs have sued Ameritas Investment Corp., a Nebraska corporation that was hired to determine the fair market value of company stock held by the ESOP. According to the plaintiffs, Ameritas valued the ESOP stock at $805.00 per share as of December 31, 2001, and $886.00 per share as of December 31, 2002. In reliance on these valuations, the ESOP participants sold—and the company redeemed—their shares at these values, and the ESOP's fiduciaries and trustees decided to accept Ameritas's valuations. (Filing 1, Notice of Removal & Attached Amended Complaint.)

In February 2004, Saia Motor Freightline, Inc., purchased all of the issued and outstanding shares of Clark Bros. stock for approximately $4,400.00 per share. The

next month, ESOP participants brought a class action in this court alleging in part that the 2002 Ameritas valuation materially misrepresented the fair market value of company stock. The parties settled the case in April 2005.

The plaintiffs then filed a lawsuit against Ameritas in the District Court of Douglas County, Nebraska, in September 2005, alleging claims of professional malpractice, negligent misrepresentation, and breach of contract. The plaintiffs alleged that Ameritas's negligence in valuing the ESOP's stock resulted in the following damages: payment for Ameritas's valuation services ($17,000.00); fees, costs, and expenses related to the settled class action ($2,009,649.00); economic losses resulting from the stock transactions of the ESOP participants ($10,035,737.59); general damages; and interest.

Ameritas removed the case to this court. Ameritas then filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (filing 5), and the plaintiffs filed a motion to remand (filing 7). The motion to dismiss has been held in abeyance until the motion to remand is resolved (filing 11). The Magistrate Judge issued a memorandum and order (filing 19) granting the plaintiffs' motion to remand and denying the plaintiffs' request for costs and expenses resulting from Ameritas's removal of this case to federal court. Ameritas has filed a "Statement of Objection, or in the Alternative, Appeal from Magistrate's Order Granting Motion to Remand" (filing 22), asserting that the Magistrate Judge erred in granting the motion to remand, in fashioning his order as a ruling on a non-dispositive matter, in finding that the plaintiffs' claims were not completely preempted under ERISA, and in sustaining the plaintiffs' relevance objection to Ameritas's index of evidence.[1]

---

[1] The Magistrate Judge's remand order has been stayed pending appeal. (Filing 21.)

## *STANDARD OF REVIEW*

Ameritas first argues that the Magistrate Judge's remand order should instead have been written as a report and recommendation on a dispositive matter. See 28 U.S.C. § 636(b); NECivR 72.2 & 72.3. Ameritas contends that a motion to remand a case from federal court to state district court is dispositive, requiring a Magistrate Judge to make a recommendation to a United States District Judge who reviews the matter de novo after the parties have filed objections. The plaintiffs counter that because a motion to remand does not reach the merits of the underlying dispute, it is nondispositive and subject to disposition by a Magistrate Judge's order, which the parties may appeal to a United States District Judge to determine whether the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

There are divergent views on this issue, even within our own district.[2] However, because I have conducted a de novo review in this case and I would reach the same decision regardless of which standard of review is applied, I need not resolve this issue now.[3]

---

[2]Nebraska Turkey Growers Coop. Ass'n v. ATS Logistics Servs., Inc., 2005 WL 2600235, at *1 (D. Neb. Oct. 13, 2005) (Magistrate Judge citing split in court decisions over whether magistrate judges have authority to rule on motions to remand and choosing to issue report and recommendation), report & recommendation rejected on other grounds, 2005 WL 3118008 (D. Neb. Nov. 22, 2005); In re Amwest Surety Ins. Co., 245 F. Supp. 2d 1038, 1041 (D. Neb. 2002) (appeal of Magistrate Judge's order granting plaintiff's motion to remand denied; noting that even if remand order were instead postured as report and recommendation, result would be the same); White v. State Farm Mut. Auto. Ins. Co., 153 F.R.D. 639 (D. Neb. 1993) (appeal from Magistrate Judge's order remanding case to state district court denied; Magistrate Judge stating that remanding case to state court is not Article III adjudicative function and can be ordered by Article I judge).

[3]Although I have not decided whether a Magistrate Judge possesses the authority to issue orders of remand to state court, I respectfully suggest that the

## *PREEMPTION ISSUE*

Ameritas accepts the Magistrate Judge's analysis of the issues presented by the plaintiffs' motion to remand as "accurate in large part." Specifically, "Ameritas does not challenge the Magistrate's description of the doctrine of complete preemption under ERISA as a basis for federal jurisdiction, or his conclusion that claims within the substantive scope of section 502 [29 U.S.C. § 1132], however characterized, trigger the doctrine of complete preemption." (Filing 25, at 7.) Rather, Ameritas complains that in pages 18 through 22 of the Magistrate's order, he erroneously focuses "upon the identity and characteristics of . . . Ameritas" when considering whether the plaintiffs' claims are within the scope of 29 U.S.C. § 1132. That is, the Magistrate Judge held that "complete preemption exists only when the defendant is a proper party who can actually be sued under § 502." (Filing 25, at 10.) Ameritas contends that the "proper analysis requires a focus not upon the defendant, but upon the identity of the plaintiff and the relief plaintiff seeks." (Id.)

In pages 18 through 22 of his order, Magistrate Judge Piester concludes that the claims asserted by the plaintiffs do not fall within the scope of 29 U.S.C. § 1132(a)(1)(B) or (a)(2), which allow a civil action to be brought by a participant or beneficiary to "recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan" or by a participant, beneficiary, or fiduciary against a fiduciary for breach of "any of the responsibilities, obligations, or duties imposed upon fiduciaries," 29 U.S.C. § 1109(a).

---

Magistrate Judges in this district issue reports and recommendations on motions to remand in the future.

### *1. 29 U.S.C. § 1132(a)(2)*

As Magistrate Judge Piester correctly states, the plaintiffs' claims of professional malpractice, negligent misrepresentation, and breach of contract against Ameritas related to the stock valuation opinions it gave to the ESOP's Administrative Committee do not support a claim for breach of fiduciary duty owed <u>to the plan</u>. The plaintiffs do not allege that Ameritas was responsible for managing or administering the plan, investing fund assets, rendering investment advice to the plan, maintaining fund records, or providing information to plan participants and beneficiaries. <u>Massachusetts Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 142-43 (1985) (identifying duties imposed on plan fiduciaries). Indeed, the plaintiffs and Ameritas assert that Ameritas was not a plan fiduciary. (Filing 31, Ameritas Reply Br. at 5 (describing Ameritas as a non-fiduciary third party); Filing 27, Pls.' Br. Opp'n Def.'s Appeal at 1-2 (Ameritas is not a plan fiduciary or plan administrator, but a third-party service provider).) Therefore, the plaintiffs' claims against Ameritas are not within the scope of section 29 U.S.C. § 1132(a)(2).

### *2. 29 U.S.C. § 1132(a)(1)(B)*

Magistrate Judge Piester concludes that the plaintiffs' claims against Ameritas for damages caused by professional malpractice, negligent misrepresentation, and breach of contract in the issuance of faulty stock-valuation opinions do not fall within the ERISA civil enforcement provisions, which allow plan participants and beneficiaries to recover "benefits due" under the plan or to "enforce . . . rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Judge Piester notes that as a non-fiduciary service provider to the ESOP, Ameritas is not a defendant from whom such relief can be sought, as would be the ESOP itself or the party controlling administration of the ESOP. In short, Judge Piester finds that the plaintiffs "do not seek relief that is available" against Ameritas under section 1132(a)(1)(B), hence "[c]omplete preemption, and therefore federal question subject matter jurisdiction,

5

does not exist," and this case must be remanded to the District Court of Douglas County, Nebraska. (Filing 19, at 20 & 25.)

Ameritas's chief complaint with Magistrate Judge Piester's preemption analysis is his allegedly erroneous focus on Ameritas's status as an improper defendant under ERISA's civil enforcement provisions. I disagree that Judge Piester's analysis is improper and, in any event, his ultimate conclusion is correct.

First, Judge Piester's consideration of whether Ameritas is an ERISA entity against which suit may be brought is not without support. Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999) (complete ERISA preemption exists when four elements are satisfied, the third of which is "the defendant must be an ERISA entity").

Second, the plaintiffs' state-law claims of professional malpractice, negligent misrepresentation, and breach of contract do not seek "benefits due" under the plan or enforcement of rights "under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Resolution of the plaintiffs' claims does not require analysis of the terms of the benefit plan, but instead involves analysis of independent legal duties created by state law, not by ERISA or the ESOP itself. See Prudential Ins. Co. of America v. National Part Med. Ctr., Inc., 413 F.3d 897, 913-14 (8th Cir. 2005) (state causes of action completely preempted if claim could have been brought under ERISA § 502 and where there is no other independent legal duty implicated by defendant's actions); Neumann v. AT&T Communications, Inc., 376 F.3d 773, 780-81 (8th Cir. 2004). The essence of the plaintiffs' claims is whether Ameritas violated a duty of care imposed by Nebraska law on all professionals, whether Ameritas failed to perform its professional services as it had represented, and whether Ameritas performed stock-valuation services in accordance with an agreement between it and the Administrative Committee of the ESOP. These questions are ones that can be answered by reference to state law which exists and functions regardless of the existence of an ERISA plan.

In short, this case turns on legal duties created by Nebraska common law, not by "the terms of the plan."

The fact that the plaintiffs' damage request may require referring to the ESOP in order to confirm the amount of economic loss incurred as a result of plan participants' stock transactions that allegedly took place after Ameritas's faulty valuation does not mean that the plaintiffs are seeking plan benefits or contributions. Rather, they seek compensatory damages proximately caused by breach of a duty of care and breach of contract that may require referring to the ESOP or to ESOP-related transactions in order to determine specific, ascertainable damages. See, e.g., Penny/Ohlmann/Nieman, Inc., 399 F.3d 692, 702 (6th Cir. 2005) (reference to plan benefits in claims against non-fiduciary providing professional services to ERISA plan was necessary to articulate specific, ascertainable damages); Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 453 (6th Cir. 2003) (state-law claims will not be preempted by ERISA when plaintiff references plan benefits as way to articulate specific, ascertainable damages; here, plaintiff sought damages for breach of employment contract equaling amount of benefits he would have received under the plan).

For these reasons, I agree with Magistrate Judge Piester that complete preemption, and therefore federal question subject matter jurisdiction, do not exist, and this case must be remanded to the District Court of Douglas County, Nebraska.[4]

---

[4] "It should be noted that courts in several circuits have held that a determination that a particular claim has not been completely preempted by ERISA for subject matter jurisdiction purposes, which leads to a remand of the action to state court, has no preclusive effect on the state court's consideration of the merits of a substantive preemption defense based on ERISA." Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 14B Federal Practice & Procedure § 3722.1, at 516 (1998).

7

## *RELEVANCE OBJECTION*

In a footnote, Ameritas complains that Judge Piester refused to consider the complaints in two other cases involving similar claims by former plan participants, as well as "a letter in which Plaintiffs characterize their own claims as [claims for] plan benefits." One of the cases (Olson v. Clark, No. 8:04CV106) has been settled and dismissed, while the other case (Denkinger v. Clark, No. 8:05CV344) is still pending before Judge Smith Camp.[5] Ameritas argues that it would be "fundamentally unfair to Ameritas to resolve a fact-based question of subject matter jurisdiction without reference to the materials which Ameritas offered to establish the factual basis for federal jurisdiction." (Filing 25, at 5 n.1.)

I fail to see how the complaints in the Olson and Denkinger cases are relevant to the question of whether the plaintiffs' claims in the case before me are completely preempted by ERISA such that their removal from state court to this court was proper. Furthermore, other than complaining that the court's failure to consider the Olson and Denkinger complaints is "fundamentally unfair," Ameritas offers no explanation regarding how these complaints are relevant to the specific question at issue. Therefore, I agree with Magistrate Judge Piester's decision to disregard such evidence as irrelevant in addressing the plaintiffs' motion for remand.

Accordingly,

---

[5]In the Denkinger case, three participants in the Clark Bros. Transfer, Inc., ESOP and the ESOP itself sue James Clark, Grant DeYonge, and Saia Motor Freightline, Inc. (the successor in interest to Clark Bros. Transfer, Inc.), for breach of fiduciary duties under ERISA. Clark, Deyonge, and the entity formerly known as Clark Bros. Transfer, Inc., have filed a third-party complaint against Ameritas alleging negligence, breach of contract, and negligent misrepresentation for Ameritas's faulty valuation of the fair market value of the shares held in the ESOP. Denkinger v. Clark, No. 8:05CV344 (D. Neb. Filed July 15, 2005), Filings 1 & 24 (Complaint & Third-Party Complaint).

IT IS ORDERED:

1. Magistrate Judge Piester's Memorandum and Order, construed as a Report and Recommendation (filing 19), is adopted;

2. The plaintiffs' Motion to Remand (filing 7) is granted;

3. The defendant's Statement of Objection, or in the Alternative, Appeal from Magistrate's Order Granting Motion to Remand (filing 22) is denied;

4. The defendant's Request for Oral Argument (filing 26) is denied as moot;

5. The defendant's motion to dismiss (filing 5) is denied; and

6. Judgment remanding this matter to the District Court of Douglas County, Nebraska, shall be entered by separate document.

May 19, 2006.

BY THE COURT:
s/ *Richard G. Kopf*
United States District Judge